UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**ALI L. CROSS,**
      **Plaintiff,**

vs.                                                                                                                                  05-1289

**ROGER E. WALKER, JR., et al.,**
      **Defendants.**

## MEMORANDUM OPINION AND ORDER

      Before the court is the Defendants', Guy Pierce, Stephen Mote, Alton Angus, Maribeth O'Connell, Rick Orr and Roger E. Walker, Jr., unopposed summary judgment motion [101] filed pursuant to Rule56(b) of the Federal Rules of Civil Procedure.

### Standard

      Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

      "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

      Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy,

1

speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

Plaintiff is an inmate currently incarcerated within the Illinois Department of Corrections. On March 16, 2006, Plaintiff filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 regarding alleged violations of his constitutional rights that occurred at Pontiac Correctional Center. Plaintiff claims that Defendants Walker, Pierce, O'Connell, and Orr were deliberately indifferent to serious medical needs, namely his problems with chronic constipation. Plaintiff further claims that Defendant Angus was deliberately indifferent to his medical needs, namely his mental health issues. Finally, Plaintiff contends that Defendant Angus and O'Connell retaliated against him in violation of his First Amendment rights. Defendants deny that they were deliberately indifferent to Plaintiff's serious medical needs. Defendants Walker, Pierce, and Mote contend that they lacked sufficient personal involvement to support a finding of liability for any constitutional deprivations allegedly suffered by the Plaintiff. Defendants Angus and O'Connell further assert Plaintiff has no evidence to support his claims of retaliation. Defendants believe that summary judgment should be granted.

## Undisputed Material Facts

1. Plaintiff was an inmate incarcerated at Pontiac Correctional Center for all dates referred to in his Complaint.
2. On June 17, 2002, Plaintiff made his first complaints to Pontiac Correctional Center's medical staff regarding his problems with chronic constipation. From June 2002, until he was transferred in January of 2006, Plaintiff was treated by medical staff 59 times for complaints of constipation. Plaintiff was routinely given over-the-counter laxatives and advised to increase his water and fiber intake. (Defendants' Exhibit A, Attached Documents to Affidavit of Margaret Brian, pgs. 1-127).
3. By Plaintiff's own admission, he received over 150 treatments of protocol medication, Milk of Magnesia, and has been taking over-the-counter laxatives since 2001. (Defendants' Exhibit I, Plaintiff's Deposition, pg. 28, 30).
4. Plaintiff's requests made to med-techs to be seen by doctors for his constipation problems were in an attempt to be seen by an outside specialist. (Defendants' Exhibit I, 28-29).
5. At no time did any doctor provide the Plaintiff with any treatment for his constipation other than over-the-counter laxatives. (Defendants' Exhibit I, pg. 29).
6. On April 15, 2004, Plaintiff was examined by Defendant O'Connell pursuant to a treatment protocol for constipation. Pursuant to the protocol, Plaintiff was given two doses of Milk of Magnesia, encouraged to increase fluid intake, increase his physical activity, and his consumption of fruits and vegetables. Based upon the guidelines of the protocol, Defendant O'Connell did not refer Plaintiff to be seen by a doctor. (Defendants' Exhibit A, pg. 71).

7. On April 15, 2004, Plaintiff filed a grievance regarding Defendant O'Connell's refusal to refer Plaintiff to be seen by a doctor. (Defendants' Exhibit B, Plaintiff's Exhibit A attached to Complaint).
8. On April 21, 2204, Plaintiff filed a grievance regarding Defendant O'Connell's refusal to refer Plaintiff to be seen by a doctor.  (Defendants' Exhibit B).
9. On April 22, 2004, Plaintiff filed a grievance regarding Defendant O'Connell's refusal to refer Plaintiff to be seen by a doctor. Plaintiff indicated that Defendant O'Connell offered to provide him with protocol medication, but he refused the medication.  (Defendants' Exhibit B).
10. On April 26, 2004, Plaintiff made complaints of abdominal pain to a med-tech and was referred to sick call. (Defendants' Exhibit A, pg. 73).
11. On April 27, 2004, Plaintiff was seen by Defendant O'Connell and Dr. Vade for sick call. Plaintiff's complaints were in regard to his problems of chronic constipation.  Plaintiff was prescribed Colace.  (Defendant's Exhibit A, pg. 73).
12. On August 14, 2004, Plaintiff was seen by a med-tech pursuant to a treatment protocol for constipation.  Pursuant to the protocol, Plaintiff was given Milk of Magnesia, encouraged to increase fluid intake, increase his physical activity, and his consumption of fruits and vegetables. (Defendants' Exhibit A, pg. 80).
13. On August 25, 2004, Plaintiff filed a grievance regarding Defendant O'Connell's refusal to refer Plaintiff to be seen by a doctor. (Defendants' Exhibit J, Plaintiff's Exhibit G attached to Complaint).
14. On August 28, 2004, Plaintiff was seen by Defendant O'Connell pursuant to a treatment protocol for constipation.  Plaintiff indicated to the Defendant that his last bowel movement was two days prior.  Pursuant to the protocol, Plaintiff was given Milk of Magnesia, encouraged to increase fluid intake, increase his physical activity, and his consumption of fruits and vegetables.  (Defendants' Exhibit A, pg. 82).
15. Roger E. Walker Jr., did not personally review any grievances filed by Ali Cross, B-20459. (Defendants' Exhibit C, Affidavit of Terri Anderson).
16. Guy Pierce did not personally review any grievances filed by Ali Cross, B-20459. (Defendants' Exhibit D, Affidavit of Guy Pierce).
17. Guy Pierce is not a licensed physician and while Chief Administrative Officer of Pontiac Correctional Center, he relied upon the licensed medical professionals assigned to Pontiac Correctional Center to adequately diagnose and treat medical problems of the offenders housed there.  (Defendants' Exhibit D).
18. To the best of his knowledge, Stephen Mote never personally reviewed any grievance submitted by Ali Cross B20459.  If he did personally review and concur in the denial of a grievance submitted by Cross, the denial of the grievance was based solely upon the recommendations and investigations conducted by the grievance officers and correctional counselor. (Defendants' Exhibit E, Affidavit of Stephen Mote).
19. Stephen Mote is not a licensed physician and while Warden of Pontiac Correctional Center, he relied upon the licensed medical professionals assigned to Pontiac Correctional Center to adequately diagnose and treat medical problems of the offenders housed there. (Defendants' Exhibit E).

20. On November 19, 2004, Rick Orr sent a letter to Ali Cross regarding his complaints concerning his medical treatment at Pontiac Correctional Center. The letter indicates that, given the Plaintiff's repeated treatment by medical staff, Defendant Orr relied upon the licensed medical professionals assigned to Pontiac Correctional Center to adequately diagnose and treat Cross's medical problems. (Defendants' Exhibit F, Plaintiff's Exhibit N attached to Plaintiff's Complaint).
21. On January 4, 2005, Rick Orr sent a letter to Ali Cross regarding his complaints concerning his medical treatment at Pontiac Correctional Center. The letter indicates that, given the Plaintiff's repeated treatment by medical staff, Defendant Orr relied upon the licensed medical professionals assigned to Pontiac Correctional Center to adequately diagnose and treat Cross's medical problems. (Defendants' Exhibit G, Plaintiff's Exhibit Q.1. attached to Plaintiff's Complaint).
22. Alton Angus is a psychologist whose duties require that he evaluate offenders to decide what mental health services are clinically indicated. (Defendants' Exhibit H, Affidavit of Alton Angus).
23. From November 11, 2002 through April 1, 2004, Alton Angus was directly ordered by his superior not to perform the routine segregation evaluations, under threat of discipline. The policy was instituted because he was the only mental health professional at Pontiac Correctional Center on a daily basis. (Defendants' Exhibit H).
24. Alton Angus is not authorized to make recommendations for offenders to be transferred to Dixon Correctional Center's Maximum Security Psychiatric Unit, as those recommendations may only be made by a licensed physician or psychiatrist. (Defendants' Exhibit H).
25. Alton Angus is not authorized to make recommendations for offenders to be transferred to the Pontiac Mental Health Unit, as those recommendations may only be made by a licensed physician or psychiatrist. (Defendants' Exhibit H).
26. Alton Angus is not authorized to place an offender in segregation, because that is a disciplinary decision made by the security staff and administration.
27. Alton Angus evaluated Ali Cross on the following dates, pursuant to Mr. Cross' placement on crisis watch, and pursuant to Cross' requests to be seen by a mental health professional:
    July, 2, 2002; July 3, 2002; February 5, 2003; February 6, 2003; March 4, 2003; March 5, 2003; March 6, 2003; March 7, 2003; June 30, 2003; August 22, 2003; August 26, 2003; August 27, 2003; November 10, 2003; November 11, 2003; November 12, 2003; November 20, 2003; November 21, 2003; October 14, 2004; October 19, 2004, and June 23, 2005.
    (Defendants' Exhibit A, pg. 7, 18-25, 39, 47, 49-50, 59-65, 88-89, 90, 168; Defendants' Exhibit H).
28. At no time did Alton Angus ever retaliate against Mr. Cross for filing grievances, nor did he refuse to evaluate or provide Cross with any clinically-indicated mental health services.
29. While incarcerated at Pontiac Correctional Center, Ali Cross was evaluated by Dr. Andrew Kowalkowski, a psychiatrist, on the following dates:

       July 18, 2002; August 22, 2002; September 26, 2002; October 25, 2002; December 4, 2002; January 8, 2003; February 10, 2003; March 12, 2003; April 17, 2003; June 25, 2003; July 18, 2003; August 18, 2003; September 29, 2003; January 19, 2004; February 16, 2004; May 24, 2004; July 28, 2004; September 28, 2004; November 29, 2004; January 24, 2005.

    (Defendants' Exhibit A, pg. 138-150, 154-156, 158-161).

30. While incarcerated at Pontiac Correctional Center, Ali Cross refused to be evaluated by Dr. Andrew Kowalkowski, a psychiatrist, on the following dates:

       May 9, 2003; October 27, 2003; November 18, 2003; December 15, 2003; March 15, 2004; April 25, 2004; June 21, 2004; August 24, 2004; October 25, 2004; and December 30, 2004.

    (Defendants' Exhibit A, pg. 31, 53, 63, 66, 70,72, 74, 81, 91, 95).

31. Ali Cross refused to take his prescribed pyschotropic medication on May 9, 2003, and August 1, 2003. (Defendants' Exhibit A, pg. 17, 43).

32. While incarcerated at Pontiac Correctional Center, Ali Cross was evaluated by other mental health professionals, namely J. Cilino, Peggy Chou, and Christine Fletcher, on the following dates:

       May 27, 2004, February 23, 2005, March 24, 2005, June 23, 2005, August 23, 2005, September 7, 2005, and November 13, 2005.

    (Defendants' Exhibit A, pg. 157, 163, 165, 167, 169-171).

## Discussion and Conclusion

    First, it is undisputed that Defendant Walker is only linked to this litigation through his alleged involvement in the grievance procedure. Plaintiff indicated in his deposition testimony that the Defendant did not personally take any actions which violated his constitutional rights, but merely approved the actions of others and refused to intervene by signing and concurring in the denial of Plaintiff's grievances. (Defendants' Exhibit I, Plaintiff's Deposition, pg. 10). However, it is clear that Defendant Walker did not personally review and sign any of the Plaintiff's grievances. (Undisputed Fact No. 15). Therefore, Walker had no personal involvement in the alleged constitutional violations, and he is granted summary judgment is warranted.

    In order to establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976). Deliberate indifference requires the prison official to act with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Therefore, a prison official cannot be liable under the Eighth Amendment "unless he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer* at 847 (1994). Otherwise, "[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally

5

be justified in believing that this prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218 (3rd Cir. 2004). The Eighth Amendment does not provide that an inmate is entitled to demand specific care, nor does it entitle him to the best care available. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). While the state has "an affirmative obligation under the Eighth Amendment to provide persons in its custody with a medical care system that meets minimal standards of adequacy," (*Meriwether v. Faulkner*, 821 F.2d 408, 411 (7th Cir. 1987)), inmates are not entitled to unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 1000 (1992); *see also Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991). " A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. Detella*, 95 F.3d 586, 592 (7th Cir. 1996). Finally, prison administrator must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment. *McEahern v. Civiletti*, 502 F. Supp. 531, 534 (N.D. Ill. 1980); *see also Allen v. City of Rockford*, 349 F. 3ed 1015, 1020 (7th Cir. 2003)(Government employees are entitled to rely on a physician's determination of the best way to treat a patient). Accordingly, a nonmedical prison official is entitled to summary judgment on a claim of deliberate indifference when he or she reasonably responds to an inmate's complaint or grievance by ensuring the inmate has been evaluated by a physician and received medical care for the complained of condition. *Johnson v. Doughty*, 433 F.3d 1001, 1010-1012 (7th Cir. 2006).

At his deposition, Plaintiff's claimed that Defendants Pierce and Mote are only involved in this action through their personal involvement in the denial of his grievances. (Defendants' Exhibit I, pg. 10-14). Similarly, Defendant Orr's involvement in this action was limited to his failure to intervene following the Plaintiff's complaints regarding his medical treatment for his problems of chronic constipation. (Defendants' Exhibit I, pg. 14-17). Finally, the Plaintiff asserts that Defendant O'Connell was deliberately indifferent to his problems with constipation in that she would refuse to provide him with protocol medications and refused to refer him to be seen by a doctor. (Defendants' Exhibit I, pg. 25-31). The facts demonstrate that Defendants Pierce and Mote were not personally involved in the denial of Plaintiff's grievances as they delegated the review of inmate grievances to a designee. (Undisputed Facts Nos. 16, 18). Moreover, even if they did personally review and concur in the denial of any of the Plaintiff's grievances regarding his medical treatment, Defendants remain entitled to summary judgment. Neither Defendant Pierce nor Mote are licensed physicians and had no authority to override any medical treatment prescribed by a treating physician. (Undisputed Fact Nos. 17, 19). Further, while the Plaintiff was receiving medical treatment for his constipation problems, the Defendants reasonably relied upon the licensed medical professionals of Pontiac Correctional Center to adequately diagnose and treat the Plaintiff's medical concerns. (Undisputed Facts Nos. 17, 19). Therefore, the court finds that Pierce and Mote were not deliberately indifferent to Plaintiff's serious medical needs.

Similarly, Defendant Orr cannot be found liable for deliberate indifference to Plaintiff's serious medical needs. After receiving complaints from the Plaintiff regarding his medical treatment, Defendant Orr, a prison administrator, ensured that Plaintiff was receiving medical

6

treatment for his complaints and relied upon the licensed medical professionals of Pontiac Correctional Center to adequately diagnose and treat the Plaintiff's medical concerns. (Undisputed Facts Nos. 20-21). Accordingly, Defendant Orr is also entitled to summary judgment.

Finally, Defendant O'Connell cannot be found to have been deliberately indifferent to Plaintiff's problems with constipation. While incarcerated at Pontiac Correctional Center, Plaintiff was examined 59 times by medical staff for his problems with constipation. (Undisputed Fact No. 2). Plaintiff was provided with over-the-counter laxatives and received over 150 treatments of Milk of Magnesia. (Undisputed Facts Nos. 3-5). Any denial of protocol medication or refusal to refer Plaintiff to a physician by Defendant O'Connell does not rise to the level of deliberate indifference as her alleged actions caused Plaintiff no harm. He was routinely provided with medications and examined by medical staff. Moreover, the provision of medication did not alleviate the Plaintiff's constipation problems as Plaintiff contends that the problems are continuous and even remain today. Further, the Plaintiff admitted that he only wanted to be seen by the doctor in a "hopeless and useless" attempt to be sent to an outside specialist. (Defendants' Exhibit I, pg. 29). Also, any decision made by Defendant O'Connell not to refer the Plaintiff to a doctor for his constipation problems was made pursuant to the guidelines of the treatment protocol for offender complaints of constipation. (Undisputed Fact No. 6). Accordingly, given the extent of Plaintiff's medical treatment for constipation, Defendant O'Connell is entitled to summary judgment on Plaintiff's claims of deliberate indifference.

Further, Defendant Angus was not deliberately indifferent to the plaintiff's serious medical needs, namely mental health issues. At his deposition, Plaintiff claimed that Alton Angus was deliberately indifferent to his mental health issues in that: (1) Angus failed to routinely evaluate the Plaintiff; (2) Angus refused to recommend the Plaintiff's transfer to Dixon Psych, a mental health institution operated by IDOC; (3) Angus refused to recommend Plaintiff's placement in the Pontiac Mental Health Unit; (4) Angus placed the Plaintiff is segregation as an alternative to treatment; and (5) Angus made bogus assessments of the Plaintiff. (Defendants' Exhibit I, pg. 18-25). Angus is entitled to summary judgment on Plaintiff's claims. Angus was not personally responsible for any alleged failure to evaluate the Plaintiff. Angus was specifically directed by his supervisor, under threat of discipline, not to conduct routine segregation evaluation rounds. (Undisputed Fact No. 23). Despite this prohibition, Plaintiff was evaluated by Angus on 20 separate occasions. (Undisputed Fact No. 27). Moreover, as Dr. Kowalkowski examined the Plaintiff 20 times, Plaintiff was being routinely treated by a licensed psychiatrist throughout this time period. (Undisputed Fact No. 29). Further, Plaintiff was also seen on a number of occasions by other mental health staff. (Undisputed Fact No. 32). Similarly, Angus was not personally responsible for Plaintiff's inability to receive a transfer to other facilities. Angus did not have the authority to recommend Plaintiff's transfer to Dixon Correctional Center's Maximum Security Psychiatric Unit or Pontiac's Mental Health Unit. (Undisputed Facts Nos. 24-25). Moreover, Plaintiff's placement in segregation is ordered by security staff and administration. (Undisputed Fact No. 26). Again, Plaintiff was receiving extensive mental health treatment, but simply disagreed with the treatment and believed that

Angus should have provided him with an alternative treatment. Angus was not deliberately indifferent to Plaintiff's serious medical needs and he is entitled to summary judgment.

Finally, Angus and O'Connell are entitled to summary judgment on Plaintiff's claims of retaliation. An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999), citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 283-4, 97 S. Ct. 568 (1977). In order to prove a retaliation claim, Plaintiff must prove that (1) he had engaged in a protected conduct and (2) he was retaliated against for engaging in this protected conduct. Dewalt v. Carter, 224 F.3d at 618 (7th Cir. 2000). Even if the plaintiff proves these elements, that is not enough if the defendant can show the result would still be the same absent a retaliatory motive. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274 , 287 (1977). It is not enough for the plaintiff to merely state retaliation played a part in the defendants' actions. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

At his deposition, Plaintiff claimed that Angus ordered that the Plaintiff's property be withheld out of retaliation. (Defendants' Exhibit I, pg. 57-58). Plaintiff further claimed that Defendant O'Connell retaliated against him for filing grievances by denying him protocol medication and refusing to refer him to a doctor on April 21, 2004, and August 24, 2004. (Defendants' Exhibit I, pg. 58-60). Angus is entitled to summary judgment on the claim of retaliation as Plaintiff has failed to demonstrate that any actions were taken in retaliation for his engagement in protected conduct. In fact, Plaintiff specifically stated that "I don't know if it was for grievances. I think it was just basically out of personal hostility." (Defendants' Exhibit I, pg. 58). Therefore, Angus is entitled to summary judgment.

Similarly, Defendant O'Connell is entitled to summary judgment. Plaintiff's claims that O'Connell retaliated against him are undermined by his own filed grievances and the medical records. On April 21, 2004, Plaintiff filed a grievance regarding Defendant O'Connell. (Undisputed Fact No. 8). In that grievance, Plaintiff simply complained that Defendant O'Connell refused to refer him to a doctor. (Undisputed Fact No. 8). Defendant's decision not to refer Plaintiff to a doctor was done, not in retaliation, but pursuant to the guidelines of the constipation treatment protocol. (Undisputed Fact No. 6). oreover, on April 22, 2004, Plaintiff filed another grievance alleging that O'Connell again refused to refer him to a doctor. (Undisputed Fact No. 9). However, the grievance also indicates that O'Connell attempted to provide the Plaintiff with the protocol medication, but Plaintiff refused. (Undisputed Fact No. 9). Further, the fact that O'Connell treated Plaintiff on April 27, 2004, provides additional support for a determination that Defendant O'Connell did not act with a retaliatory motive. (Undisputed Fact No. 11).

Similarly, O'Connell did not retaliate against the Plaintiff on August 24, 2004, by refusing to refer him to a doctor. The Plaintiff's medical records clearly indicate that given the Plaintiff's repeated complaints of constipation and the guidelines of the treatment protocol, referral to a doctor was unwarranted. Moreover, Plaintiff simply wanted to be referred to a

doctor in order to request treatment by an outside specialist.  Also, once again O'Connell treated the Plaintiff a short time after the alleged act of retaliation, which undermines the inference of a retaliatory motive.  (Undisputed Fact No. 14).  Accordingly, Defendant O'Connell is entitled to summary judgment.

**It is therefore ordered:**

1. **Pursuant to Fed. R. Civ. Pro. Rule 56(c), Defendants' summary judgment motion [101] is granted.  The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff.**
3. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal** *in forma pauperis* **should set forth the issues the plaintiff plans to present on appeal.  See Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**Enter this 22nd day of September 2008.**

s\Harold A. Baker

_____
**Harold A. Baker**